UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

UNITED STATES OF AMERICA,

      --against--    12 Cr. 117  (JGK)


WILLIAM MASSO,

          Defendant.
-------------------------------------------------------------------X


# MEMORANDUM IN AID OF SENTENCING
## ON BEHALF OF
## WILLIAM MASSO


RONALD P. FISCHETTI, ESQ.
FISCHETTI & MALGIERI LLP
  *Attorney for William Masso*
747 Third Avenue
20th Floor
New York, NY, 10017
Phone: (212) 593-7100
Fax: (212) 758-2809
*www.fischettilaw.com*

Phyllis A. Malgieri, Esq.

# TABLE OF CONTENTS

I.      **PRELIMINARY STATEMENT**……………………..……………....1


II.     **DISCUSSION**

      A. LEGAL STANDARD………………………………..…..2

      B. THE PRE-SENTENCE REPORT'S RECOMMENDED

         GUIDELINES……………………………………………...4

      C. THE OFFENSE CONDUCT…………………………….5

      D. MASSO'S HISTORY AND CHARACTERISTICS……………9


II.     **CONCLUSION**………………………………………...…...19

## I.

## PRELIMINARY STATEMENT

William Masso, a former New York City Police Officer,[1] with an impeccable service record for over 18 ½ years, comes before this court for sentencing based on what can only be described as an aberration.  We do not minimize the seriousness of the offenses to which Masso has pleaded guilty and for which he has accepted full responsibility.  Rather, as discussed below, there are numerous factors which should be considered before determining the appropriate sentence including sentencing factors reflected in 18 U.S.C. §3553(a).

A Judge's responsibility when sentencing a defendant is undoubtedly a difficult task.  As this Court is surely aware, there are a variety of factors which the Court must consider in determining the appropriate sentence – not simply the offense of conviction, but the history and characteristics of the defendant as well.  For this reason we have attached as Exhibits "A" and "B", a host of letters from the community and Masso's family, which provide valuable insight into who Masso is, which we submit should not be overshadowed by his lapse of reason which underlies his offense conduct.

Unfortunately, notwithstanding all of his good deeds, heroic acts and risks he took for the community, his transgressions and admitted failures are likely to dwarf all of his accomplishments.  We therefore respectfully urge this Court to evaluate this case based on the individual conduct which forms the basis for Masso's conviction, and to also measure this against all of his acts of benevolence and service as a police officer in fashioning an appropriate sentence.

---

[1] On February 6, 2012, Masso was terminated from his employment as a New York City Police Officer as a result of his guilty plea in the instant matter.

II.

**DISCUSSION**

**A.    LEGAL STANDARD**

As this Court is undoubtedly aware, the United States Supreme Court decision in *United States v. Booker*, 543 U.S. 220 (2005), has reshaped the way a sentencing judge can impose a sentence. The sentencing court may consider the guideline range, as well as any basis to depart from that range. However, the Court is no longer required to impose a sentence within that range. In fact, the federal sentencing guidelines are but one factor among several in determining an appropriate sentence. *Kimbrough v. United States*, 128 S.Ct. 554, 574 (2007). The guidelines are only the "starting point and initial benchmark..." *Id., citing Gall v. United States*, 128 S.Ct. 586, 596 (2007). It is the sentencing judge who has the advantage of familiarity with the details of the case and can best evaluate the import of the § 3553(a) factors. *Id., Kimbrough*, 128 S.Ct. at 574, *citing Gall*, 128 S.Ct. at 597.

In determining a sentence that is "sufficient, but not greater than necessary," the first of those factors the judge must consider is "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. §3553 (a)(1). Without a doubt, the breadth of this factor alone extends far beyond the guidelines and implores the sentencing judge to consider the unique circumstances and characteristics of the defendant in each case. A consideration of those characteristics, along with the remaining seven factors,[2] may render sentences that do not fit within the guidelines, yet

---

[2] The seven other factors are (1) the nature and circumstances of the offense; (2) the history and characteristics of the offender;(3) the need for the sentence imposed to reflect the goals of sentencing set forth in § 3553(a)(2); (4) the kinds of sentences available; (5) the Commission's policy statements; (6) the

2

are fair and meet the goals of sentencing set forth in §3553 (a)(2). *See United States v. Ovid*, 09 CR 216, slip op. 3 (EDNY, Oct. 1, 2010).

Therefore, the Court may not simply presume that the Guidelines range is reasonable. *Gall*, at 597. Rather, the Court must make an individualized assessment based on the facts presented.  From its unique vantage, the Court may conclude that, despite the guidelines, "in a particular case, a within-Guidelines sentence is 'greater than necessary' to accomplish the goals of sentencing. . ." *Kimbrough*, 128 S.Ct. at 570, *citing* 18 U.S.C. § 3553(a).  The not "greater than necessary" language of the federal sentencing statute incorporates the need for the sentence to "reflect the seriousness of the offense," "promote respect for the law" and "provide just punishment for the offense."  18 U.S.C. § 3553(a).  Indeed, as the Supreme Court suggested in *Gall*, a sentence of imprisonment may not promote respect for the law if it appears unduly harsh in light of the real conduct and circumstances of the particular case. *Gall*, 128 S.Ct. at 599; *see also Rita v. United States*, 127 S.Ct. 2456, 2465 (2007) (observing that district court may consider arguments that "Guidelines sentence itself fails properly to reflect § 3553(a) considerations").


## B.    THE PRESENTENCE REPORT'S RECOMMENDED GUIDELINES

On February 6, 2012 the defendant pleaded guilty to Counts One through Four of the four-count information. Specifically, Masso pleaded guilty to conspiracy to transport firearms interstate (Count One); conspiracy to transport defaced firearms interstate (Count Two); conspiracy to sell a firearm to an out-of-state resident (Count Three) and

---

need to avoid unwarranted sentence disparities among similar defendants who commit similar crimes; and (7) the need to provide restitution to victims. *See* 18 U.S.C. §3553 (a).

conspiracy to transport and receive stolen merchandise (Count Four) all in violation of 18 U.S.C. §371.

**GROUP ONE:**

**COUNTS 1, 2, and 3: Prohibited Transactions Involving Firearms or Ammunition**

| | |
|---|---|
| Base Offense Level (§2X1.1(a)) | 12 |
| Number of Firearms (§2K2.1(b)(1)(B)) | +4 |
| Obliterated serial numbers (§2K2.1(b)(4)(B)) | +4 |
| Organizer/Leader (§3B1.1(a)) | +4 |
| Abuse of Trust (§3B1.3) | +2 |
| Adjusted Offense Level | 26 |

**GROUP TWO:**

**COUNT 4:  Conspiracy to transport and receive stolen merchandise**

| | |
|---|---|
| Base Offense Level (§2B1.1(a)(2)) | 6 |
| Amount of loss §2B1.1(b)(1)(H) | +14 |
| Organizer/Leader (§3B1.1(a)) | +4 |
| Abuse of Trust (§3B1.3) | +2 |
| Adjusted Offense Level | 26 |

| | |
|---|---|
| Grouping (§3D1.4) (2 units) | 2 |
| Acceptance of Responsibility (§3E1.1(a) and (b)) | -3 |
| Adjusted Offense Level | **25** |

Having never before been arrested and having no prior criminal record, Masso is in Criminal History Category I. **This yields a recommended guideline range of 57 to 71 months.**

## C.    THE OFFENSE CONDUCT

Masso cannot justify his actions and he does not seek to do so. He accepts full responsibility for his commission of the crimes to which he pleaded guilty and is very remorseful in having committed them. However, we believe that Your Honor can show some degree of leniency in fashioning an appropriate sentence due to the fact that this whole case is based on a sting operation.  There is no question that what he did was wrong but there are no victims, no monetary loss and no violence.

For approximately one year, Masso, an active New York City Police Officer, partook in conduct that was unbefitting a police officer and, at the same time, invited some of his colleagues to join him.  For this, he is truly sorry.  Prior to this period, he lived a law abiding life.  He had never been arrested nor was he involved in any criminality.  His life revolves around his family first and his job second.  He was trying to make some extra money so that he could eventually buy a house for his family.  He is still living in an apartment in Brooklyn with his wife and three children.  Masso wasn't thinking about anything other than being able to give his wife and children a home of their own.  In every waking minute of his life, his family was always his most important priority.

Masso's incarceration will undoubtedly cause significant pain and hardship for not only his immediate family, but his extended family as well. We submit that these considerations weigh in favor of imposing a lenient sentence on Masso. The shorter

Masso's incarceration, the sooner Masso can return to his family and his children and invest his energy into caring for his children Nicholas (16 years old), Talia (14 years old) and Sophia (9 years old) and his continued caring for his aging  elderly parents, both of whom are in their 80s. "Since many of the offenders with young children also constitute lower recidivism risks in light of their offense of conviction and their prior criminal records, sentencing judges should at least be allowed to consider the impact of a prison sentence on families and minor children. For that reason, more offenders with heavy family responsibilities, and especially those with minor children, should be eligible for intermediate sanctions." Nora v. Demleitner, *Smart Public Policy: Replacing Imprisonment with Targeted Nonprison Sentences and Collateral Sanctions*, 58 Stan. L. Rev. 338, 352 (2005).

There is no dispute that our children are a refection of ourselves and are the product of their family environment. Parental incarceration severely disrupts one's childhood. Vast amounts of scholarly articles have been written about the negative effects that incarceration of parents has on young children.

> When a parent is incarcerated, (1) children's lives are disrupted; (2) children often lose contact with their parents; (3) prison visits are difficult (4) most children live in poverty before, during and after their parents incarceration; (5) children experience difficult memories; and (6) children are at an increased risk for poor academic treatment, truancy, dropping out of school, gang involvement, early pregnancy, drug abuse, and delinquency.

Child Welfare League of America, *What Happens to Children?* (2005).

Nicholas Masso, tries to explain the wonderful role model his father is and what he is facing when his father is incarcerated.  He writes:

6

...My father has been there for me no matter what, and I can truly say he has been, along with my mother, the most inspirational person in my life....My father has always told me to treat others the way I would like to be treated, with the utmost respect...My father is the type of man who would run to the world and back for his family and this is exhibited every single day.  He is always helping his parents whom both became ill due to old age...My parents love for one another is like none other I've ever seen; this explains why they have been together for so long...

...Being the eldest child I feel an abundance of pressure that I must face each day.  Now I must step up to the plate and become a father figure towards my two younger sisters and look out after my mother, this I not because I have to, but because I want to.  ...My father leaving us will be, by far, the hardest moment my two sisters and I will encounter in our young lives.  It shatters me that my youngest sister, Sophia, the twinkle of my father's eye, will have to be pried from her daddy's arms when he has to leave us.

...Your Honor I have been blessed with such an extraordinary father, and I hope I have painted a picture of the man my father truly is.

Nicholas Masso's letter is annexed hereto as Exhibit "A," at pp. 1-4.

Similarly, "[o]ver 50% of the children of incarcerated parents had school problems, such as poor grades or instances of aggression." Ross D. Parke and K. Alison Clarke-Stewart, *Effects of Parental Incarceration on Young Children*, from U.S. Department of Health & Human Services Conference "From Prison to Home" (2001).

Masso's middle child, his daughter, Talia, has chosen to describe to Your Honor the wonderful gifts her father has given her.  She writes:

...My father has given me an abundance of gifts throughout my lifetime.  These gifts that I know I will always cherish do not have a price tag.  They cannot be found in any store in the mall.  These gifts aren't materialistic in any way whatsoever.  I am sure that my father doesn't even realize what he has given to me, only because he is so modest.  My father has taught me how to love, one of the most human

7

emotions anyone can ever feel, as well as one of the best. My father has taught me to be kind to everyone, despite the way they have ever acted towards you. My father has taught me to be compassionate, and to never give up on my dreams. And even if these dreams seemed too far to reach, he would always be there to pick me up on his shoulders and help me become one step closer to them. My father has taught me how to laugh, even when my tears have blurred my vision. I know I will never return any of these gifts, only pass them down to my own children someday and hope that they will take each and everyone and implement them into their own lives.

She ends her letter to Your Honor with the following:

...Any man can be a father, but it takes someone special to be a dad. I love my daddy with all of my heart.

Talia Masso's letter is annexed hereto as Exhibit "A," at pp. 5-7.

This Court should not overlook the impact that incarceration will have on Masso's family. Masso's incarceration will leave his wife with the enormous burden of raising their children alone. In addition to his immediate family, Masso is instrumental in taking care of his elderly parents and his mother-in-law. His 81-year-old father recently underwent surgery for a brain tumor. (*See* Exhibit "A," at p. 51). His 81-year-old mother is an insulin dependent diabetic, has coronary artery disease and is on multiple medications. *(See* Exhibit "A," at p. 50). At the same time, his mother-in-law was recently diagnosed with ovarian and lung cancer. Masso has taken an active role in her chemotherapy appointments, as well as being there for his wife and her siblings through this ordeal.

8

## D.     MASSO'S HISTORY AND CHARACTERISTICS

William Masso is a 48 year old married man who is a loving husband to his wife of almost 20 years, Lenore, and a devoted father to his three children: Nicholas (16); Talia (14) and Sophia (9). He is the third of four children born to Vera and Ciro Masso. He has an older brother and sister and a younger brother. The individual that now comes before Your Honor to be sentenced is a man with an enormous support group of not only his immediate family, but of friends, community members and fellow police officers. The man described in the character letters is dedicated to his family, a loving individual who accepts everyone with open arms and is always ready to lend a helping hand whenever and wherever needed. He is a man who worked tirelessly and supported a wife and three children. This is a man who is genuinely good, who sought to help his family and community and did so each and every day - proudly, and without hesitation. As his sister Hope writes,

> ..."My children lost their father and I lost my husband to stomach and liver cancer four years ago. Watching my husband deteriorate was a very difficult time for us. We would have never made it through if it wasn't for Billy. Because of him, my children didn't go astray and turn to alcohol or drugs. He took us from our darkest moments and brought us to a light where we bonded together to get through my husband's death and our families became stronger than ever before."

Hope Milea's letter is annexed hereto as Exhibit "A," at pp. 8-9."

We received over 50 letters from friends and family on behalf of William Masso. We reviewed each and every letter and they all describe the same man, a man who put every ounce of energy into his work and his family. After carefully sifting through the letters, we have selected those we believe are most telling and provide for the Court a

window into who Masso really is. From these letters, we have extracted various excerpts that provide an accurate cross-section of the content within all the letters we received. Unfortunately, when facing a criminal sentencing proceeding, a defendant's criminal conduct undoubtedly overshadows their otherwise virtuous characteristics. That notwithstanding, we submit that Masso's virtuous characteristics warrant leniency at sentencing.

1.    **Masso as a New York City Police Officer**

The sentencing guidelines before this Court are the proverbial barometer used to decide where within or without those guidelines the Court would like to sentence a defendant. Those guidelines are just advisory as the Supreme Court has held in *United States v. Booker*, 543 U.S. 220 (2005), rightfully so because those guidelines do not account for the otherwise patriotic acts that Masso has embarked upon for the last 18 and one half years of his life. Listed below is just a sampling of some of the deeds that make Masso rise above the average police officer. Putting himself in harms way for the betterment of his neighbors and the members of the community he patrolled in Brooklyn.

Retired NYPD Officer, Ricardo Rivera, has written to Your Honor about Masso's compassion and dedication to his profession, his fellow officers, and to people in general. He writes:

> ...He was never reluctant to go the extra mile regardless of the circumstances.  What I mean is when you needed a helping hand he never said no.  He was always respectful and caring to the public he was serving or to the police officers he worked with.  I remember the night I was injured.  He was one of the first officers on the scene and comforted me a great deal until the ambulance arrived.  It meant a lot to me.  Knowing someone was there for me while I laid face down on the floor.  I'm not saying he's

superman, I'm just saying when you needed him he was there to help.

Mr. Rivera's letter is annexed hereto as Exhibit "A," at pp. 10-12.

Another retired NYPD officer has written to Your Honor to express her gratitude for Masso's assistance years ago. She writes:

> ...Billy helped me when I was severely injured in a radio car accident and recuperating at home for one year. He took my children to the park, ran errands for me and called everyday to see if there was anything he could do for me or my family. This was in 1985. My husband and I consider him family to this day.

Mrs. Otero's letter is annexed hereto as Exhibit "A," at pp. 13-14.

Even as a young boy, Masso was always concerned about the welfare of his friends and family and risked his life to save his friend. More importantly, true to his character, no one ever knew except himself and the person whose life was saved. As Daniel Ruspantini writes Your Honor:

> ...I remember one incident that if it were not for Billy Masso I would not be here today. This is true because he saved my life. My house in Mill Basin was on the water. We used to go on my deck to fish and catch the crabs off the poles by holding onto the dock. In the winter the water froze over and became hard enough to walk on. I decided to walk on the ice and I fell in. Without a second thought Billy ran on the ice to pull me out. His risked his own life to save me. Billy didn't even hesitate he just did what he had to do to save me. Once again he had my back. We never told our parents and never walked on the ice again. Someone had to be watching over us that day.

Daniel Ruspantini's letter is annexed hereto as Exhibit "A," at pp. 15-17.

After September 11, 2001, law enforcement was encouraged to participate in the World Trade Center Rescue, Recovery and Clean-Up Operations. Masso volunteered at Ground Zero for 7 days straight putting in 14 to 16 hours each of those 7

days rather than stay in Brooklyn on his regular patrol. He put himself in danger those crucial days after the attack on our country and searched buildings for survivors and brought supplies and equipment to other volunteers. He did this voluntarily and whole-heartedly because he believed it was the right thing to do and wanted to help in the rescue, recovery and clean-up.

Also, Masso's evaluations throughout his 18 ½ years as a police officer were always excellent. No disciplinary actions nor complaints were ever filed against him. He received awards for meritorious police duty and excellence. He received numerous certificates for perfect attendance. We have taken the liberty of including a sampling of these awards and have annexed them hereto as Exhibit "C."

In addition, Masso was injured in July 2011 during a high speed chase of an individual who was in possession of a loaded weapon. Masso chased the perpetrator and fell during the chase injuring his knee. Medical documents indicate Masso has a torn medial meniscus with chondromalacia of the patella in his left knee. These medical documents are annexed hereto as Exhibit "D."

Several friends of Masso have written to Your Honor to inform you of an incident involving a friend wherein Masso was instrumental in saving his life. Rick DeBiasi writes:

> ..."Nick" had paid for and planned the party but never showed up, some of the women who knew him and were present at the party were worried that something bad had happened. Everybody felt helpless, they reached out to William for guidance. He took action, called it "in" and subsequently saved Nick's life. He had overdosed and as a direct action taken at that moment, our friend was taken to the hospital by police and lived. He never took credit, always shrugged off the compliments as if it was nothing but in fact he saved a life!

Rick DeBiasi's letter is annexed hereto as Exhibit "A," at pp. 18-19.

Steve Jacobs, another friend of the defendant writes:

> ...He was a prominent person in saving a friend of ours who was suicidal and helped in the prevention of that tragic incident. I've seen him be the first responder to three auto accidents in our neighborhood and actually saved one of the persons by dragging her out of the automobile before the car caught fire.

Steve Jacobs' letter is annexed hereto as Exhibit "A," at p. 20.

Lawrence Colangelo, another childhood friend of Masso, also recounts the fact that Masso helped save the life of their friend, but also recounts an event from their teenage years. He writes:

> ...While taking a bus back home after a day at the movies with friends, we noticed a neighborhood kid get hit by a car while riding his bike. William immediately ran up to the bus driver and told him what had happened. The bus driver stopped the bus and William, myself, and two other friends went to the scene of the accident. William, noticing that this boy was one of his classmates helped comfort him and saying everything will be OK prior to the ambulance arriving. Looking back on this day as well as others, I realized why William chose the occupation that he did. I believe it is in his nature to instinctively help others in need.

Mr. Colangelo's letter is annexed hereto as Exhibit "A," at pp. 21-22.

## 2.     Masso as a member of the community

Masso has done many benevolent acts of kindness over the years. He is someone who will goes out of his way to help others. Geri Karl, a 94 year old widow who has known Masso for five years, writes:

> ...When I met William it was like God sent me an angel. William brings me food and hot soup in the winter. He

> helps me with my shopping, banking, and postal needs.  If
> it wasn't for William I don't know if I would be alive
> today.

Ms. Karl's letter is annexed hereto as Exhibit "A," at p. 23.

He is also an avid animal lover.  Nancy S. Mure, a freelance writer and author of

nine children's books, insisted on writing to Your Honor about an act of kindness

bestowed upon her by William Masso.  She saw Masso as a humanitarian and an animal

lover.  She did not even know he was a police officer.  She writes:

> …William Masso gave me a dog.  It wasn't his dog.  It was
> a dog someone could no longer care for.  It was a dog he
> couldn't bear to see enter a shelter.  It was a happy Golden
> Retriever.  Did William know at the time what he would be
> doing for a single mom with a mother just diagnosed with
> lung cancer and a child deathly afraid of animals?….Your
> Honor, William Masso didn't know he was a lifeboat.  He
> didn't know he was helping an over-stressed mom stay
> afloat by giving her something to put her positive energy
> into.  Sure he knew he was saving the dog, but how could
> he know he was saving a human?  The answer is he didn't
> know.  He was only driven by the act of doing something
> inherently good….and he NEVER asked for anything in
> return.

Ms. Mure's letter is annexed hereto as Exhibit "A," at pp. 24-25.

When Masso was on the job, he was always concerned about the people in the

neighborhood he patrolled.  Even the employees at the corner news stand, located at 8604

4th Avenue have written to Your Honor about a man they say was not only a wonderful

police officer but a friend.  They recount the following:

> …We always had homeless people or drunken people in
> the store during the night time and sometimes it was hard
> getting rid of them, so we would call Officer Masso.  He
> always handled it in a calm and respectful way.

Their letter is annexed hereto as Exhibit "A," at pp. 26-27.

Masso also tried to be a mentor and "big brother" to his nephew's friends. He tried to be a voice of reason for them and encourage them to stay on the right path, not follow the crowd. His nephew's friend, Anthony Cosares, has written to Your Honor about the man he refers to as "Uncle Bill." He writes:

> ...I have always referred to William as "Uncle Bill" because he has been like an uncle to me for about fifteen years. Your Honor, Billy has been there for me with the mental and spiritual support through my tough teenage and young adult years. Such issues concerned deaths in the family, relationship problems, and everything in between...He has picked me up in times of pain and spoken with me for hours on end to help relieve my stress. He is a beautiful soul your honor, and I know he has done wrong, but I hope that this letter has touched your heart in some way and gave you an image and story behind the name William Masso.

Anthony Cosares' letter is annexed hereto as Exhibit "A," at pp. 28-29.

### 3.   Masso as a family man

Leonore Masso, Masso's wife and mother of their three children, describes for the Court how Masso is the most kind, gentle, sweet, tender and compassionate person she has ever met. She writes:

> ...William is an incredible father...His love and pride never goes unnoticed. His devotion comes through in many ways, by never missing a school play, a student of the month ceremony, an award ceremony, or a graduation...He is always encouraging them to be better – to believe, even if it seems unbelievable, to respect all, because everyone is deserving of respect...William has been my pillar of strength. He stood by me and has gotten me through many difficult moments...His love and devotion may begin with me and his children, but it no way ends there...He is what every parent would want in a son. He is the son I want my own to be...William's kindness is exuberant. It never goes unnoticed.

15

> To sum up all of the twenty-eight years of my life with William, I would like to leave you with two important things.  First a quote from James D. Miles – "You can easily judge the character of a man by how he treats those who can do nothing for him." This I feel fits my husband's character perfectly.   Secondly, in the scheme of life, William, the children and I may be insignificant.  But in the compounds of the four walls in our apartment, (which is our home), we are the world to each other.

Lenore Masso's letter is annexed hereto as Exhibit "A," at pp. 30-32.

His parents have written to Your Honor, each expressing their views of their son and how they depend on him.  His mother writes:

> …There hasn't been a day that goes by that William doesn't take the time to come by for a visit or call just to see how everything is going.  He has always been there for me, whether to go buy a container of milk or do a major repair in my home.  I have always depended on William for many things.  My son has helped me especially when I was sick.  He hs taken care of me as well as taking me for many doctors' appointments.  He never questions why, he just does it.

His father goes on to say what an intricate part his son plays in his life.  He writes:

> …Since William was a young man, I have depended on him.  This has not changed.  I still depend on him today.  I depend on him because I know he'll always be there.

Mr. and Mrs. Masso's letters are annexed hereto as Exhibit "A," at pp. 33-35.

His nieces and nephews have all written to Your Honor about the kind of man their Uncle is and the role he plays in each of their lives.  Masso's 18 year old niece, Francesca Milea, who lost her father in 2008, writes:

> …My father passed away from cancer in 2008.  This was the worst thing that could have possibly happened to me.  I lost my best friend, my life , my daddy.  I was his angel, his little girl…Of course nobody would ever be able to take his place, but ever since he passed my uncle Billy has been doing a really good job being a father figure for me and my

16

brothers.  I remember like it was yesterday, the day my dad passed, my uncle holding me in his arms telling me "It's going to be okay, I'm here now, I'm going to take care of you and I'm not going anywhere."  His kind words made me feel safe and warm....Your Honor my uncle is my rock, I can't go on with life without him, so please don't keep him for long.  We need him, I need him.  I've already lost my daddy, please don't distance me from the closest thing to it.

Francesca Milea's letter is annexed hereto as Exhibit "A," at pp 36-37.

Her brother, Thomas, has also written to Your Honor, about his uncle.  He writes:

...Since as far back as I can remember my uncle has always been there for me...I also remember a day that I almost drowned in our neighbor's pool.  It was William who jumped in with all of his clothes and wallet to save me...He's like a second father to me.

Thomas Milea's letter is annexed hereto as Exhibit "A," at pp. 38-39.

Michael and Carl Milea, siblings of Francesca and Thomas, write to Your Honor to express how comforting Masso was to them when they lost their father.  How no one but Uncle Bill brought the comfort they were seeking.  Michael writes:

...His presence alone made me feel at ease...My uncle is one of the nicest men I know, and the most father like figure that I have...Honestly your honor what I fear the most is losing my last and only father figure.

Michael Milea's letter is annexed hereto as Exhibit "A," at pp. 40-43.

Carl writes:

...Your honor for as long as I can remember my uncle Bill Bill has been there for me through thick and thin.  When ever I was down and out, it was my uncle that picked me up and told me how to keep moving in the right direction...Every bit of advice my uncle has ever given me made me the kind, gentle, loving man I am today.  After my father passed about four years ago, my uncle has been there for me through the good times and the bad; he made it his job to make sure I walked the straight and narrow...

Carl Milea's letter is annexed hereto as Exhibit "A," at pp. 44-45.

Gregory T. Cerchione, Esq., a family friend for approximately 35 years, writes to the Court about Masso's character.  He writes:

> …The true measure of his personality, however, was evidenced when his sister's beloved husband and one of my closest personal friends, Carl Milea, passed away after a long battle with cancer.  Throughout this devastating ordeal, I observed William take full charge of his sister's family and help to guide, console and comfort his sister, niece and nephews.  His commitment to family has proven to be continuing and unwavering and I value and respect our friendship.

Mr. Cerchione's letter is annexed hereto as Exhibit "A," at pp. 46-47.

Sophia Masso, Masso's youngest daughter, is extremely close to her father.  She has written a heartfelt letter to Your Honor.  The letter speaks volumes of their close relationship.  Her letter is annexed hereto as Exhibit "A," at pp. 48-49.

There are many other letters of similar import written by relatives and friends which are collectively annexed hereto as Exhibit "B."  These letters show a genuine concern for this man from many family members and friends as well as members of the community who have known Masso for many years.  They evidence the man that has always been there for them in their time of need despite his own problems or tragedies.  They speak of an individual who selflessly gives from the heart.

## CONCLUSION

For all the foregoing reasons, we respectfully request that the Court exercise its discretion to impose upon Masso the most lenient sentence the Court deems appropriate. He now finds himself disgraced and shamed as a result of his misdeeds. He has lost his career, his pension and his dignity.  His family is receiving food stamps and surviving on the benevolence and charity of family members. In light of all these factors, we respectfully request that the Court show compassion in sentencing and impose a non-guidelines sentence that is fair and just with full consideration of Masso's personal circumstances.

Dated:        New York, New York
              July 11, 2012

                              Respectfully submitted,

                              RONALD P. FISCHETTI

                              /s/

                              Attorney for the Defendant
                              WILLIAM MASSO

19